This case is Wiley v. MSPB Welcome back, Mr. Broyden. Thank you, your honor. You may proceed. May it please the court. I represent Bill Wiley, a long time federal employee. He retired in 2001 under the Civil Service Retirement System. Then he divorced in 2002, entered into a property settlement. The property settlement provided for a division of the retirement benefits, but with no provision for a survivor annuity for the ex-spouse. Around about 2006, after the legal papers had been filed, Mr. Wiley realized that his annuity was still being diminished. But now they say they're going to change their decision, that he's right, they should change it? Oh, if they said he's right, I wouldn't be here, your honor. Okay, well, at least they say they're going to, they're rescinding their former decision, right? Why doesn't that do what you want to have done? Oh, the former decision simply perpetuates the diminution of the annuity by the survivor annuity. You see, he continues, his annuity was diminished. But that was withdrawn, the former decision was withdrawn, and they said they would issue a new one. The harm continues. His annuity was diminished by a survivor annuity that was elected prior to the divorce. Divorce comes along, there's a property settlement. We understand all that. Yes, sir. I think the record is clear as to what happened. He filed for a specific change in that, and it took the government two years almost to send them a note that they will continue it, and then all of a sudden they decided to withdraw it after the appeal was filed. They withdrew, according to OPM counsel, the decision, but the harm lives on. The problem for Mr. Wiley is that his civil service retirement system annuity continues to be reduced today. Now, let me ask you another question. If, in fact, the government at this point decides that your client is correct, that they should not withhold any further annuity provision, survivor annuity provision, can he go back to 2002 with the day of the divorce decree and recover the difference at that point? Yes, sir. There would have to be a refund. Did you ask for a refund? No, but that's not the point of the case, Your Honor. Well, in 2006, the letter that was sent in December almost was a request for information, more so than a request for a change.  You could read it that way. He's saying, why is my annuity being diminished by the survivor annuity provision? And then OPM responds in 2008 saying the court order says that the survivor annuity is supposed to be deducted. Well, that's incorrect. But he waited four years before raising this whole issue, right? It was from 2002 or 2003 until 2006. Three or four? Three or four years. Yes, yes, but that doesn't bar his request to OPM. That's, again, not the issue of the case. But, again, they're rescinding. Are you really complaining about that you want it to happen faster? It would be useful if it had been decided by today, for example, while we're in this court arguing, but apparently it's not. The OPM responded to this case in late 2008 by saying we're rescinding the decision which led to the appeal, and we're going to issue another decision. The problem in the case, Your Honor, is what the board did was just cut Mr. Wiley-Bruce over his objection, saying, all right, well, OPM is going to do something someday somehow. We don't know when and we don't know how, but we're dismissing your appeal. So what's Wiley-Bruce to do? The harm continues to today and continues beyond today with no clear indication of when OPM is ever going to decide this case. Now, in the past, what the board has done, a number of means, it's exercised control over these cases, and I've cited to the court several cases, final decisions of the board that are published, where what the board does is say, okay, OPM, we're going to dismiss this case. You've got 30, 60, or 90 days to issue your new decision, and that appellant, if you're not happy with either, A, them not issuing a new decision or the new decision itself, you can come back to us either with a petition for enforcement or for a new appeal. But at least the board exercises some control. So are you arguing that the board ought to be telling OPM how to do its job? Yes. Once a legitimate appeal is filed, Mr. Wiley received a decision from OPM. He had a choice, appeal it or not. If he hadn't appealed it and waited until some later date, OPM might argue that the appeal was untimely and therefore should be dismissed, even with a vested retirement benefit. So he did what he thought he had to do. He appealed. The board had jurisdiction over the appeal, and then OPM sought to cut out the jurisdiction by labeling its decision as something other than final. If you look at the OPM decision, it doesn't say it's an initial decision. It doesn't advise of a right of reconsideration. It just says here's the situation. We have a court order that says your retirement annuity will be diminished for the survivor annuity. That was just plain wrong. It gave no notice of a right to appeal, but that didn't divest him of the ability to take or the board to receive and exercise jurisdiction over that appeal. So the appeal was timely from a decision of OPM. But was it a final decision at that point? It didn't say, Your Honor. It just said the decision of OPM simply states that your annuity will be reduced by the survivor annuity benefit. That was almost 22 months after the original request for it. That's right. The request was in 2006, and then the OPM letter came out in 2008. Wiley did the only thing he could properly do, and that's appeal. But if it's not a final decision, does he have grounds for appeal at that point? Well, that's some part of the issue here, whether it is or whether it's not a final decision. After the fact of the issuance of the decision, which was not stated as an initial decision. It was withdrawn. OPM's counsel said we're withdrawing this, we're rescinding it, we'll give you another decision. The problem in the case, why we're here, is not so much the characterization of the decision but the failure of the board to take control over this case and give OPM some time limits, which it has done in several other cases. And I've cited those cases in my brief. They're D'Andrea, Peters, and Fagone. These are final decisions of the board. I don't come forward to all the initial decisions of administrative judges of the board where they've done exactly the same thing. So what we've asked here is that the court require MSPB, not only in Mr. Wiley's case but others like his, where other people may not come to this court on this type of issue. They may not have the means to do it. We ask that the court impose some order upon MSPB. And I can't understand why MSPB would, in their brief, even object to this. Their objection is very technical. They're not saying it's impractical for us to do this. They're not saying we haven't done it in the past. They're not saying we don't have all sorts of procedures to do it, continuances, dismissals without prejudice, or like in those three cases I've suggested to you, just ordering OPM to give up a decision within a set period of time. Well, I can appreciate what you're saying, but do we have jurisdiction if there's no final decision by OPM? You have a final decision by the board, Your Honor. Your jurisdiction is to review a decision of the board. The board has issued a final decision here. They said they had no jurisdiction. The board said the case was moot. It's not moot. Mr. Wiley continues to have a diminished annuity. It's far from moot. What we're suggesting is the board exercise procedural controls, which it has the power to do, and it has done in the past. And one of the precepts of the law is that if the board has done something for a period of time procedurally, that if it departs from that procedure, it provides a reason. The board has done absolutely no such thing in response to this appeal. The only thing the board raises here is the finality of the decision of the Office of Personnel Management. The board, in their reply brief, has not responded to our arguments with respect to use of continuances, dismissals without prejudice, or even the several cases that we cited where the board has imposed upon OPM a time limit to get its new decision out reasonably quickly within the lifespan of the annuitant. Thank you, Your Honor. Thank you, Mr. Breuder. We'll save the remainder of your time. Mr. Gallagher? May it please the Court. Why couldn't OPM, if it intends to restore Mr. Wiley's appropriate amounts, why can't it just have done so by now? Well, my understanding is that whenever there is an appeal to the board, OPM halts processing on it. But it's stated it intends to change things, hasn't it? It's rescinded its earlier... Why wouldn't it have just gone through with what it intends to do and taken this off the table? Well, that would have certainly been... If they had issued a decision by now, you mean? Yes. Well, instead, their policy appears to be to wait until this tract comes to a completion, and then they issue a decision. So we affirm the board. The board says you're going to rescind, so it's over, and we wait. In the meantime, he's losing, every month, money. Something doesn't make sense there. Right. Well, I agree the delay here is unfortunate. The MSPB is not the place to go, however, to complain of delayed OPM unless that delay is specific to the facts of the complaint, the case. But from time to time, OPM does have backlogs, and the place to go to complain about OPM backlogs is Congress, not the MSPB. Well, 22 months in order to answer a request, doesn't that seem rather an inordinate long time to you? It does. I agree. But again, the MSPB... And each month, he loses. How much does he lose each month? I'm not completely sure of the amount. That's record. We ought to know that. Yeah, it is in the record. It depends on the cost of living adjustments as time goes on. However, it's true. On the other hand, you know, if it goes back to OPM, OPM rescinds it. It should be given a chance to correct whatever decision it wants to correct. It could find, in Mr. Wiley's favor, that ends the proceedings. There's no need for further proceeding before the board or this board. Will it take another 22 months to do that? Well, if that's the case, the board has recognized an exception where there are repeated requests for a decision. Unlike this case, and there's no decision forthcoming. Here there was a letter. Mr. Wiley describes it now as a letter seeking a decision. Here there was a letter asking some questions. And OPM responded with a letter that appears to be a letter responding to that inquiry. OPM, before the board, described that as an initial decision. Whatever we call it, it's been rescinded. There's really nothing left for the board to review. As far as what Mr. Wiley's advocating here, it actually creates more inequities if the board were to routinely impose time limits in these types of cases. OPM has a first in, first out policy. There's a queue of cases before them. And it's unfortunate that they have a backlog that they don't answer something in 22 months. And by the way, the MSPB here issued an initial decision a month after Mr. Wiley filed an appeal. And issued a final decision four months after Mr. Wiley filed his appeal. But back to OPM, it's unfortunate that it took that long. However, it would not be equitable to allow a certain class of annuitants who have attorneys or who are otherwise savvy to board case law to file a premature appeal to the board and somehow jump ahead of the line because they're aware that they can come to the board and ask for these time limits to be imposed. So only in very unique circumstances has the board imposed time limits in this type of situation. How long does it normally take for OPM to make a decision in a situation like this? It varies. It's usually less than a year. Well, obviously, it took them more than a year the first time. And it's now almost a year later from that particular time. So we're going to have to wait another year. Mr. Wiley has to wait another year before he gets a final decision from OPM? Well, I hope not. I hope that he receives his immediate decision. Have you inquired into it as to what it takes for him to get a final decision? He should receive a decision. I have, actually. I've spoken with OPM. And my understanding is they don't process things on two tracks. And as long as this is being adjudicated here before the court or before the board, they're not processing it back at OPM. But as soon as this comes to a completion, OPM should issue something. If it doesn't… How long will that take? They have not received any promises from OPM on how long it will take, nor does the MSPB really have… You said you inquired as to how long it would take. What was the result of that inquiry? Let me correct that. I inquired into the status of the claim here. I didn't ask when they would have it done. So that's been put on hold. So another hiatus that will take more time to resolve. It will. It will. And, you know, part of it is if Mr. Wiley just allowed OPM to issue a decision, it might have been a favorable decision, and that would end the process. Instead, we're continuing this policy-type arguments about the delay here. Again, it's one thing I would concede is the delay here is unfortunate. I would agree 22 months is too long. You'd be frustrated too, wouldn't you? I would be frustrated too. But should the MSPB routinely in this type of case set time limits? I would say no. That would create more inequities and more problems than it would be worth. There's no rule at the OPM that every letter gets answered within 14 days. No. The retirement statute sets no time limits. So, again, if Mr. Wiley believes there should be time limits, then that should be addressed to Congress because Congress can amend the law. The MSPB can't. Congress has given OPM the role of administering the retirement programs. Under the statute, the Board is reviewing OPM actions. OPM is not setting retirement policy. And there are unique circumstances where the MSPB will set time limits in cases, and each case is unique. Mr. Wiley cited some cases, and each one of those cases has very unique facts. But if there's anything theme common to them, it's there's some kind of administrative limbo created by OPM. For example, the Fagone case cited by Mr. Wiley. Mr. Fagone said, I want a decision. And OPM said, well, first you have to show us that your application is timely. And Mr. Fagone said, I want a decision. And they were going in circles. And finally Mr. Fagone came to the Board. And that was a case where the Board found time limits were appropriate. They ordered Mr. Fagone to file his argument and evidence with OPM within 30 days that his application was timely. And then the Board ordered OPM to issue a decision within 90 days so that this administrative limbo, this circular process, would come to a completion. It sounds like a bureaucratic black hole. The document goes in and nothing ever comes out. Well, that's exactly the type of case where the Board will intervene. Here there have not been repeated requests for a decision. If, as you suggest, this goes back to OPM and they don't act on it, well, then we're getting into the situation where there has been repeated requests for a decision without answer. But that's not the facts of this case. There was a letter written to OPM. OPM took too long to respond to it. I would agree with that characterization of the facts. However, now OPM says we're rescinding that letter and we will issue a decision. And that's the status of the case. Unless there are other questions, I'll get back to you later in my time. Thank you, Mr. Gallagher. Mr. Broida, you have six and a half minutes. Thank you, Representative. Well, more of my good friends at the Board have to say I've done a gross disservice to my client by bringing this case here because I've effectively managed to delay it by nine months or ten months that it takes the Federal Circuit to go from the point of filing an appeal to the time we have our discussion today. But I'd like to think as an advocate I've brought some service to my client by bringing this issue to the Federal Circuit. Certainly the Office of Personnel Management has made no public statement of which I'm aware that they delay adjudications while a case is being pursued through judicial review. There's certainly nothing in their record, although I do not gainsay what my friend is saying with respect to the OPM policy. I think it's a terrible policy, and they ought to make it public because what that results in basically is a disadvantage to anybody who pursues the right to petition the government for their grievance by going to this court. And if that's the policy of OPM, I think it should be made publicly known through Federal Register notice and rulemaking and opportunity comment. I am concerned about hearing this for the first time in my client's case in this court. But beyond that, this case doesn't just affect Mr. Wiley. There are a lot of Federal annuitants. Twenty percent of the Board's caseload involves retirement appeals of one sort or another. These people are on fixed incomes or no incomes. They don't necessarily have the money to hire lawyers to pursue their cases to the Federal Circuit. They make a request to the Office of Personnel Management for an annuity or some type of relief, and then the OPM gets involved in these jurisdictional wrangles about what is and what's not a final decision. Now I think the Board has some responsibility to control this, and has done so in the cases that my friend from the Board and I have been discussing. And the only thing I can say here is that this affects not only Wiley, but a lot of people. And this business of making repeated requests to OPM for a decision that it should have issued right the first time or issued at least once the first time, how many times does one ask for a decision? Once a month? Once every six months? The Board has never defined this. And I think at some point the Board has responsibility for controlling this process. That's what Congress mandated. I don't think Congress requires that we go back and ask them to modify the law so that OPM has a limited period of time to issue a decision. I think what Congress said was the organization that's supposed to superintend this is the Merit Systems Protection Board, which has been designated as having exclusive statutory authority with respect to reviews of OPM decisions. We had a decision. My client, Tom, we appealed, placed it into the jurisdiction of the Board. No question it was properly there. And then OPM sought to moot it by saying they'd issue a decision sometime, which still has not been received. I think it's inequitable. I think it's arbitrary treatment by the Board. I think the Court should do something about it and reverse this case with directions to the Board to have OPM issue a decision on this retirement appeal within 60 or 90 days. Thank you, sirs. Thank you, Mr. Breuder. That concludes our morning. All rise.